UNITED STATES, Appellee

v

JAMES A. BURNS, Private First Class, U. S. Army,
Appellant

15 USCMA 553, 36 CMR 51

No. 18,736

December 17, 1965

*Captain James A. Buttry* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Lieutenant Colonel Jacob Hagopian.*

*Captain Michael E. Phenner* argued the cause for Appellee, United States. With him on the brief were *Colonel Joseph J. Crimmins* and *Lieutenant Colonel Francis M. Cooper*.

## Opinion of the Court

QUINN, Chief Judge:

On this appeal the accused contends that the court-martial which tried him for several offenses in violation of the Uniform Code of Military Justice lacked jurisdiction, because he had been previously discharged. The contention stands or falls on the legal effect of a document titled "Honorable Discharge" which was issued to the accused on February 26, 1964.

The accused was born on September 11, 1937. On February 24, 1958, he enlisted in the Regular Army for three years. In late 1960, some months before completion of the term of his enlistment, he was released from active duty. Under existing law, he was obligated to remain in a reserve component of the Army for an additional period ending in February 1964. 10 USC § 651. By appropriate order, he was transferred to the Army Reserve and assigned to the USAR Control Group (REINF), XV Corps, but he did not long remain in the Reserve. Seventy-seven days after his release from active duty he reenlisted for three years. This was on February 14, 1961.

In October 1963, the accused was granted emergency leave. However, he remained away more than a year past the period of the leave. In the interval of unauthorized absence, he received the document in issue. About six months later, he was apprehended by an agent of the Federal Bureau of Investigation and returned to military control. On September 17, 1964, he was confined in the Post Stockade at Fort Jackson, South Carolina, pending investigation of the circumstances of his absence and the issuance of the discharge. Three weeks later, he escaped. He remained away until December 28, 1964. In due course he was brought to trial on two charges of unauthorized absence and escape from confinement, in violation of Uniform Code of Military Justice, Articles 86 and 95, 10 USC §§ 886, 895, respectively.

Appellate defense counsel contend that the document received by the accused in February 1964 legally effected his separation from active duty, and he was not, thereafter, subject to military law. United States v Steidley, 14 USCMA 108, 33 CMR 320. Oppositely, the Government maintains that the discharge merely released the accused from his reserve obligation, and it had, therefore, no legal effect upon his amenability to military law resulting from his reenlistment in 1961.

According to the accused, an enlisted person cannot serve simultaneously in both the Regular Army and the Army Reserve. Thus, he argues, his reserve status was terminated *eo instanti* when he reenlisted in February 1961. The honorable discharge he received in February 1964 could, therefore, affect only the obligation stemming from his reenlistment. The conclusion drawn by the accused does not necessarily follow from the premise of his argument.

Immediately before the accused reenlisted, he was required by law to serve in the Reserve. 10 USC § 651 provides that every male "who . . . becomes a member of an armed force before his twenty-sixth birthday . . . shall serve in the armed forces for a total of six years"; and upon release from active duty every person "who is not a Reserve, and who is qualified, shall . . . be transferred to a reserve component . . . to complete" the obligated period of service. This was the accused's situation in late 1960. Consequently, when released from active duty he was properly transferred to the Army Reserve. According to the accused, his reenlistment terminated his reserve status. Government counsel concede as much. In their brief they admit that "[a]n enlisted member in the Regular Army is, by definition, not a member of the Army Reserve." From a practical standpoint, the argument has force. Conditions of active duty in the regular component may

554

make impossible compliance with the attendance and participation requirements of the reserve group to which the reservist is assigned. There is also some legal support for the view advanced. The statutory scheme dealing with reserve and regular enlistments can be construed as indicating that enlisted status in one component is inconsistent with such status in another component of an armed force. 10 USC § 510, et seq., § 3251, et seq. Army regulations, dealing with the separation of enlisted persons from the Reserve, upon which the accused strongly relies, appear to require administrative action to discharge a reservist from the Reserve when he enlists in the regular component.[1] However, neither the statutory scheme nor the regulations indicate that termination of the reserve status carries with it nonliability to military jurisdiction under a regular enlistment contract. Consequently, conceding for the purpose of this appeal ■ that the accused should have been, or actually was, relieved from his reserve status by his reenlistment in the Regular Army, a document attesting to that fact would not operate as a discharge from the obligations of the reenlistment. With this understanding of the law and background of the issue, we turn to the document relied upon by the accused to support his assignment of error.

The instrument is titled "Honorable Discharge"; and it seems to be a standard form of discharge. It is dated February 26, 1964. The name of the accused is indicated thereon as follows: "PVT 2 BURNS JAMES A ER 15-592 565 USAR." Government counsel contend that the designations "ER" and "USAR" refer, respectively, to Enlisted Reserve and United States Army Reserve and unmistakably characterize the document as a discharge from the Reserve, not the Regular Army. Whether these designations are sufficient by themselves to identify the nature of the discharge need not detain us. At the very least, they invite further inquiry into the purpose of the certificate. A Letter Order authorizing issuance of the certificate has been presented to us by the Government. At trial the accused denied receiving a copy of the order, but did not then, and does not now, dispute the fact of its promulgation. Under the circumstances established by the record on appeal, it is apparent that the discharge and the antecedent order must be read together. United States v Noble, 13 USCMA 413, 416, 32 CMR 413; cf. United States v Doherty, 10 USCMA 453, 455, footnote 1, 28 CMR 19.

The subject of the Letter Order is "Discharge from United States Army

---

[1] AR 140–178, Army Reserve, Enlisted Separation and Reports of Death, June 6, 1960, as amended, was in effect at the time of the accused's reenlistment in 1961. The regulation was superseded by AR 135–178, October 16, 1961. The substance of the two is the same. Pertinent provisions of the regulation current when the accused reenlisted are as follows:

"4. Delegation of authority. Authority to discharge enlisted reservists for the following reasons is delegated to officers comparable to those authorized by paragraph 18, AR 635–200 to discharge persons on active duty:

a. Upon expiration of term of enlistment or period of obligated service. See AR 135–90.

.  .  .  .  .

c. Upon enlistment, . . . except that—

(1) Discharge to enlist in a Regular component other than the Regular Army is not authorized for reservists within the 60-day period immediately preceding the effective date of orders to active duty. . . .

.  .  .  .  .

"6. Processing requirements.

.  .  .  .  .

c. Date of discharge

.  .  .  .  .

(2) When discharged under the provisions of paragraph 4c or d above, discharge action will be effected upon receipt of notification of entry into [the] new status.

(3) When discharged by reason of completion of service obligation, date of discharge may be the last day of the month preceding the month in which obligated service is completed."

Reserve." The text expressly provides that the individual  named is released from the "Army Reserve (Ready)" because of "Expiration Term of Service." Authority for the discharge is given as "Para 9a, AR 135–178" which deals with reserve components. See Footnote 2. The Letter Order leaves no doubt that the discharge issued to the accused related only to his reserve obligation. It was not a discharge from his reenlistment contract. As a result, at all times important to this prosecution, the accused was a member of the Regular Army and subject to the Uniform Code of Military Justice and trial by court-martial.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.